**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

v.

WILLIAM SADLEIR,

               Defendant.

No. 20 Cr. 320 (PAE)

---

<u>**WILLIAM SADLEIR'S RESPONSE**</u>
<u>**TO GOVERNMENT'S MOTION IN LIMINE**</u>

John J. Kucera
jkucera@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017

Matthew L. Schwartz
Valecia Battle
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001

*Attorneys for William Sadleir*

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

MOTION *IN LIMINE* STANDARD ......................................................................................... 2

ARGUMENT ............................................................................................................................... 3

      1.     The Court Should Permit the Defense to Introduce Evidence of the ▆▆
           ▆▆▆▆ Opinion of Randy Robertson's Untruthfulness, Including
           Extrinsic Evidence ............................................................................................. 3

      2.     The Court Should Permit the Defense to Cross Examine Mr. Robinson
           About Bias and Improper Motive, Permit Extrinsic Evidence of His Bias
           and Improper Motive; and the Court Should Permit Cross Examination of
           Specific Instances of Mr. Robinson's Conduct as Related to His
           Credibility ........................................................................................................... 6

           A.     Bias, Improper Motive, and Extrinsic Evidence ......................................... 6

           B.     FRE Rule 608(b) ......................................................................................... 8

      3.     Evidence of Wealth ............................................................................................ 10

      4.     Mr. Sadleir's "Good Acts" ................................................................................ 11

      5.     BlackRock and/or BIT's Negligence ................................................................ 11

      6.     "Presence of Counsel" Defense ......................................................................... 11

      7.     "Jury Nullification" ........................................................................................... 12

      8.     Cairn and Aviron ............................................................................................... 12

           A.     Cairn Theory ............................................................................................. 13

           B.     Aviron Theory ........................................................................................... 14

      9.     FRE 404(b) ......................................................................................................... 15

           A.     Cairn Theory ............................................................................................. 17

           B.     Aviron Theory ........................................................................................... 18

      10.    Out of Court Statements..................................................................................... 18

CONCLUSION .......................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Berkovich v. Hicks*,
  922 F.2d 1018 (2d Cir.1991) ............................................................................... 3

*Brinson v. Walker*,
  547 F.3d 387 (2d Cir. 2008) ................................................................................ 6

*Ismail v. Cohen*,
  899 F.2d 183 (2d Cir. 1990) ............................................................................... 17

*Luce v. United States,*
  469 U.S. 38 (1984) ............................................................................................. 2

*Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Grp.*,
  937 F. Supp. 276 (S.D.N.Y. 1996) ...................................................................... 2

*Old Chief v. United States,*
  519 U.S. 172 (1997) ........................................................................................... 15

*Palmieri v. Defaria,*
  88 F.3d 136 (2d Cir. 1996) ................................................................................. 2

*Ruffin v. City of Bos.*,
  146 F. App'x 501 (1st Cir. 2005) ......................................................................... 3

*Saldarriaga v. United States,*
  No. 97CR1275WK, 2002 WL 449651 (S.D.N.Y. Mar. 21, 2002) ........................ 9

*United States v. Abel,*
  469 U.S. 45 (1984) ............................................................................................. 6

*United States v. Agostini,*
  280 F. Supp. 2d 260 (S.D.N.Y. 2003) ................................................................ 9

*United States v. Aminy,*
  15 F.3d 258 (2d Cir. 1994) ................................................................................. 16

*United States v. Brown,*
  69 F. Supp. 2d 518 (S.D.N.Y. 1999) .................................................................. 8

*United States v. Carboni,*
  204 F.3d 39 (2d Cir.2000) ............................................................................. 12, 13, 14

*United States v. Cedeno,*
  644 F.3d 79 (2d Cir. 2011) ................................................................................. 8

*United States v. Corey*,
 566 F.2d 429 (2d Cir. 1977)..........................................................................16

*United States v. Curley*,
 639 F.3d 50 (2d Cir. 2011).................................................................. 15, 16, 17

*United States v. Donovan*,
 No. 20-CR-374 (PKC), 2021 WL 6065767 (E.D.N.Y. Dec. 22, 2021)................................. 9

*United States v. Garcia*,
 291 F.3d 127 (2d Cir. 2002)..........................................................................16

*United States v. Gonzalez*,
 110 F.3d 936 (2d Cir.1997)...........................................................................12

*United States v. Hamlett*,
 No. 3:18-CR-24 (VAB), 2019 WL 3387098 (D. Conn. July 26, 2019),
 *aff'd*, No. 19-3069, 2021 WL 5105861 (2d Cir. Nov. 3, 2021).  Under Rule 608(a)(1) ......... 3

*United States v. Harvey*,
 547 F.2d 720 (2d Cir. 1976)........................................................................... 7

*United States v. James*,
 609 F.2d 36 (2d Cir. 1979)............................................................................. 7

*United States v. Levy*,
 731 F.2d 997 (2d Cir. 1984)..........................................................................15

*United States v. McCallum*,
 584 F.3d 471 (2d Cir. 2009)..........................................................................15

*United States v. Nachamie*,
 101 F. Supp. 2d 134 (S.D.N.Y. 2000).................................................................15

*United States v. Obayagbona*,
 627 F. Supp. 329 (E.D.N.Y. 1985) .................................................................... 8

*United States v. Paredes*,
 176 F. Supp. 2d 179 (S.D.N.Y. 2001)................................................................. 2

*United States v. Peterson*,
 808 F.2d 969 (2d Cir. 1987)..........................................................................16

*United States v. Sokolow*,
 91 F.3d 396 (3d Cir. 1996)...........................................................................11

*United States v. Watson*,
 669 F.2d 1374 (11th Cir. 1982) ....................................................................... 3

*United States v. Watts*,
   934 F. Supp. 2d 451 (E.D.N.Y. 2013) ................................................................. 8

*United States v. Weiss*,
   930 F.2d 185 (2d Cir. 1991) ................................................................................ 8

*United States v. Williams*,
   No. 11 CR. 663(AT), 2014 WL 4651968 (S.D.N.Y. Sept. 15, 2014) ...................... 3

*United States v. Young*,
   470 U.S. 1 (1985) ................................................................................................ 5

*Van Arsdall*, 475 U.S. 679 ..................................................................................... 8

**Rules**

Fed. R. Evid. 403 ................................................................................................. 17

Fed. R. Evid. 404(b) ..................................................................................... passim

Fed. R. Evid. 608(a) .............................................................................................. 3

## PRELIMINARY STATEMENT

On or about June 23, 2020, Mr. Sadleir was charged in an indictment with two counts of wire fraud and one count of aggravated identity theft.  The indictment describes two purportedly separate schemes, which it refers to as the "advertising scheme" and the "UCC scheme." Discovery reveals that the charges in this case were based almost entirely on the complaints of BlackRock, the purported victim.  BlackRock, reportedly the world's largest asset manager, loaned money to Aviron Pictures, of which Mr. Sadleir was CEO, apparently in violation of its internal rules and risk limits.  It seems that certain BlackRock executives had grown enamored of the movie business and committed quite a bit of BlackRock's money so that they personally could be closer to it.  When BlackRock discovered what its own executives had done, it took steps to recoup its money, including effectively forcing Aviron into receivership and complaining to the government, leading to Mr. Sadleir's arrest in May 2020.

Until he was fired in February 2020 after failing to disclose that he arranged for his daughter to appear and receive a credited role in one of Aviron Pictures' movies that BlackRock helped to finance, *After*, Randy Robertson was a managing partner at BlackRock.  Robertson was the BlackRock executive primarily responsible for directing BlackRock funds to Aviron Pictures, and Robertson's signature on certain documents is the basis for the aggravated identity theft charge contained in Count Three of the indictment against Mr. Sadleir.  Robertson is therefore a central witness.

Discovery in this case reveals that Mr. Robertson began discussing his daughter's acting career with Aviron from the beginning of the relationship, and the daughter's aspiring acting career was an ongoing and frequent topic of discussion.  Since around the same time as BlackRock terminated Mr. Robinson, ███████ been conducting an investigation into Mr. Robertson based on his undisclosed conflicts of interest, related concerns about his decisions to

lend millions of dollars of BlackRock funds to Aviron, and his subsequent monitoring of those investments and the employees involved.

During the course of the ███████████████ (which ██████████ suspended at the request of the U.S. Attorney's Office), Mr. Robertson and others have testified to the events leading to BlackRock terminating him, which events are inextricably intertwined with the government's allegations against Mr. Sadleir.  During ██████ investigation, one of the ██████ attorneys disclosed that the attorney was of the opinion that Mr. Robertson was untruthful when he testified to ██████ about what he told BlackRock regarding *After*, the Aviron movie that included a credited role for his daughter, and about the structure of the various movie loans that BlackRock made to Aviron.  ██████ attorney also noted that Mr. Robertson's testimony and accounting of events differed from that of Mr. Robertson's daughter and of Mark Volosov, another BlackRock executive.

## MOTION *IN LIMINE* STANDARD

The purpose of a motion *in limine* is to allow the trial court to rule on the admissibility and relevance of certain forecasted evidence before the evidence is actually offered at trial.  *See Luce v. United States,* 469 U.S. 38, 40 n. 2 (1984); *Palmieri v. Defaria,* 88 F.3d 136, 141 (2d Cir. 1996).  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001).  Courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 286–87 (S.D.N.Y. 1996).  Furthermore, the court's ruling regarding a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]."  *Luce,* 469 U.S. at 41.

2

**ARGUMENT**

1.    **The Court Should Permit the Defense to Introduce Evidence of ████ ████ Attorney's Opinion of Randy Robertson's Untruthfulness, Including Extrinsic Evidence**

"[Federal] Rule [of Evidence] 608 governs the use of character evidence to attack credibility.  The rule provides: The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation . . . .'" *United States v. Watson*, 669 F.2d 1374, 1381 (11th Cir. 1982) (quoting Fed. R. Evid. 608(a)).  Specifically, Rule 608(a) allows the introduction of opinion evidence, but only to a witness's character for truthfulness or untruthfulness.  *Ruffin v. City of Bos.*, 146 F. App'x 501, 509 (1st Cir. 2005); *see also United States v. Hamlett*, No. 3:18-CR-24 (VAB), 2019 WL 3387098, at *17 (D. Conn. July 26, 2019), *aff'd*, No. 19-3069, 2021 WL 5105861 (2d Cir. Nov. 3, 2021).  Under Rule 608(a)(1), "there is no rigid prohibition of introducing extrinsic evidence to impeach a witness on a collateral matter; rather, under Rule 403, the judge would make a practical judgment as to whether the importance of the witness's testimony and the impeachment warrants the expenditure of the additional trial time." *United States v. Williams*, No. 11 CR. 663(AT), 2014 WL 4651968, at *7 (S.D.N.Y. Sept. 15, 2014) (quoting *Berkovich v. Hicks*, 922 F.2d 1018, 1025 (2d Cir.1991)).

"[O]pinion testimony is a personal assessment of character.  The opinion witness is not relating community feelings, the testimony is solely the impeachment witness' own impression of an individual's character for truthfulness." *U.S. v. Watson*, 669 F.2d at 1382.  Because opinion testimony does not require familiarity with a person's reputation, "a foundation of long acquaintance is not required for opinion testimony." *Id*.  "Once [the witness's personal basis of knowledge has been] established, the witness should be allowed to state his opinion, cross-examination can be expected to expose defects." *Id*. (Cleaned up).

The Court should permit the defense to introduce evidence of ███████ attorney's opinion that Mr. Robertson was untruthful when he testified about what he told BlackRock or BIT regarding his daughter's role in the Aviron film and about the structure of the BlackRock loans that Mr. Robertson helped direct to Aviron.  This evidence comports with FRE 608(a)(1)'s requirement that such evidence may only relate to the witnesses' character for truthfulness. Further, opinion evidence of Mr. Robertson's untruthfulness is not collateral, ███████ investigation is related to Mr. Robertson's testimony about subject matter directly related to this case.  Presumably, the government intends to call Mr. Robertson as a witness because the government's case will rely, at least in part, on Mr. Robertson's testimony about BlackRock's loans to Aviron, the conditions for those loans, the structure of those loans, who at BlackRock or BIT was aware of the loans and their structure, and whether he signed and/or authorized to be signed certain documents.  Far from being collateral, evidence about Mr. Robertson's truthfulness related ███████ investigation goes to the heart of the government's allegations in this case.  To this point, it is worth noting ███████ agreed to suspend its investigation on this subject at the request of the U.S. Attorney's Office after the government "raised concerns ███████ investigation interfering with the Government's preparation for trial during this time period."  (Jan. 3, 2022 *Brady/Giglio* disclosure letter from the government).   Those concerns illustrate the government's concession ███████ investigation *is not* collateral to the government's allegations related to Mr. Sadleir.

███████ attorney examined Mr. Robertson at length about facts and details that are closely related to the government's allegations against the defendant.  This establishes ███████ attorney's personal knowledge (in satisfaction of FRE 602) as a foundation for the opinion that Mr. Robertson was untruthful.  And because the subject matter of Mr. Robertson's testimony to ███████ so closely related and intertwined with the government's allegations against the

4

defendant, there should be little concern that the probative value of this evidence would be substantially outweighed by any prejudice under FRE 403.

In its Motion, the government declines to consider FRE 608(a) as it applies to the admission of opinion evidence.  Instead, the government suggests that ███ attorney's opinion about Mr. Robertson's untruthfulness is akin to a prosecutor's opinion that a witness is believable, or that a defendant is guilty, and the Court should prohibit witness opinion evidence because of this supposed similarity.  Gov. Motion, p. 9.  This position misunderstands the rationale for the prohibition of a prosecutor vouching for a witness or expressing her opinion on the guilt *of the accused*, and it misconstrues the opinion of a witness, which may then be subject to cross examination, with the arguments of a prosecutor who is not subject to cross examination and who carries with her "the imprimatur of the Government, and may induce the jury to trust the Government's judgement rather than its own." *United States v. Young*, 470 U.S. 1, 18–19 (1985).

The government's brief correctly points out that it would be improper for an Assistant U.S. Attorney to opine that she "personally believed certain witnesses' statements favorable to the Government's case were credible."  Gov. Motion, p.9. But, consider the opposite.  If, after eliciting substantial testimony from a witness, say during a grand jury proceeding, the AUSA then concluded, perhaps in writing, that the witness's testimony, although favorable, was untruthful and inconsistent with other testimony.  In such a case, it likely would be unethical and perhaps misconduct for that AUSA to then call the same witness to elicit the same testimony at a subsequent trial.  The government's obligations under *Brady* also might require that the government provide the AUSA's opinions and conclusions to the defendant if the government still intended to proceed to trial.  The same rationale that prohibits a prosecutor from vouching

would not prohibit a defendant from introducing evidence related to the government's well-founded doubts as to the credibility of its witnesses or its evidence, rather the opposite is true.

To the government's credit, in this case the government did provide to the defense ███ ██████████ opinion that Mr. Robertson was untruthful during his testimony.  Because it is not improper, and because FRE 608(a) authorizes it, the Court should permit the defense to introduce evidence of ████████████ opinion of Mr. Robertson's untruthfulness.  Should the Court agree, the defendant will work with the government to craft a stipulation on this point, so that the evidence can be introduced in as streamlined a way as possible.[1]

2.  **The Court Should Permit the Defense to Cross Examine Mr. Robinson About Bias and Improper Motive, Permit Extrinsic Evidence of His Bias and Improper Motive; and the Court Should Permit Cross Examination of Specific Instances of Mr. Robinson's Conduct as Related to His Credibility**

A.  Bias, Improper Motive, and Extrinsic Evidence

"Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party."  *United States v. Abel*, 469 U.S. 45, 52 (1984).  "It is a clearly established principle of Supreme Court jurisprudence that the Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross examine witnesses against him in order to show bias or improper motive for their testimony."  *Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008).  Bias may be induced by the witness' self-interest, and proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, is entitled to assess all evidence that might bear on the accuracy and truth of a witness's testimony.  *United States v. Abel*, 469 U.S. at 52.  The law is well settled in this

---

[1]     Should the government decline to agree to a stipulation, we respectfully request that the government be required to ████████████ lawyer available at trial.

6

Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely. *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976). "Although the scope of a defendant's right to introduce evidence of bias is not limitless, and may be restricted as the trial court in its sound discretion deems proper, it is rarely proper to cut off completely a probative inquiry that bears on a feasible defense." (Cleaned up) *Id.* at 723. Unlike FRE 608(b)'s prohibition against the admission of extrinsic evidence to prove specific acts of a witness's conduct, a witness's bias or improper motive is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely. *United States v. James*, 609 F.2d 36, 46 (2d Cir. 1979).

In *U.S. v. James*, the Second Circuit upheld the defendant's conviction based on the totality of the evidence, but the Court found that the district court erred when it excluded FBI records related to a witness for the government that the defendant sought to introduce as extrinsic evidence relevant to the government witness's motive for testifying. *Id.* at 45. Likewise, in *U.S. v. Harvey*, after the government's eyewitness to a robbery testified, the trial court excluded as collateral a defense witness who would have testified that the government's eyewitness had a history with the defendant and had once threatened to someday "take revenge" on the defendant, and therefore the eyewitness had a motive to testify falsely. *Id.* at 722. The Second Circuit found that there was no evidence that the defense's extrinsic evidence would have caused confusion or prejudice and held that because the extrinsic evidence had been excluded, the conviction must be reversed. *Id.* at 724.

As discussed earlier, the focus ███████ investigation of Mr. Robertson remains ongoing and involves many of the same issues and facts as the government's allegations against Mr. Sadleir, and the government will likely question Mr. Robertson about these same issues and facts. Mr. Robertson could face serious negative consequences ███████ investigation as a

result of his answers to questions he will be asked at trial, which may bear on the accuracy and truth of his answers.  He therefore has a number of motives stemming directly from the existence of the ███████ investigation – to minimize his misconduct to protect himself from legal liability, to ensure that his testimony is consistent with his prior (dubious) testimony, to please the government, etc. – that bear directly on his credibility.  Cross examination of Mr. Robertson on his self-interest and the potential motives for his answers is therefore relevant.

    B.  FRE Rule 608(b)

   Rule 608(b) vests the district courts with discretion to permit cross-examination into "specific instances of conduct" if the conduct is "probative of [that witness's character for] truthfulness or untruthfulness."  Fed. R. Evid. 608(b).  "While a district court may impose reasonable limits on cross-examination to protect against, for example, harassment, prejudice, confusion, and waste, *Delaware v. Van Arsdall*, 475 U.S. 673 at 679, it must also give wide latitude to a defendant in a criminal case to cross-examine government witnesses."  (Cleaned up) *United States v. Watts*, 934 F. Supp. 2d 451, 483 (E.D.N.Y. 2013) (citing *United States v. Weiss*, 930 F.2d 185, 197 (2d Cir. 1991)).  A trial court should not exercise its discretion in a manner contrary to the plain meaning of Rule 608(b)(1), *United States v. Brown*, 69 F. Supp. 2d 518, 519 n. 1 (S.D.N.Y. 1999), nor in contravention of a defendant's right under the Confrontation Clause to an effective cross-examination.  *United States v. Cedeno*, 644 F.3d 79, 82 (2d Cir. 2011).  However, FRE 608(b) does exclude extrinsic evidence of specific bad acts to attack a witness's credibility.  *United States v. Obayagbona*, 627 F. Supp. 329, 342 (E.D.N.Y. 1985).

   In the section of its Motion related to FRE 608(b), the government cites three cases for the proposition that a witness cannot be cross-examined on specific instances of conduct that do not relate to the witness's character for truthfulness or when the probative value of questioning is

substantially outweighed by the prejudicial nature of the cross examination.  Each of the government's descriptions of its cited cases is misleading, and none of the cases support the government's contention that "absent a jury verdict or admission of wrongdoing," civil enforcement allegations have no "independent bearing on Robertson's truthfulness." *United States v. Donovan,* No. 20-CR-374 (PKC), 2021 WL 6065767, at *9 (E.D.N.Y. Dec. 22, 2021) (the court denied cross examination of a police officer regarding a pending civil rights suit, without commenting on the facts of that civil rights suit, as being irrelevant to truthfulness and unduly prejudicial before there was any finding of wrongdoing); *United States v. Agostini*, 280 F. Supp. 2d 260, 262 (S.D.N.Y. 2003) (finding that recent arrests on domestic violence charges, which include no statement of wrongdoing by the witness, lack "relevance to the issue of the witness's veracity"); and *Saldarriaga v. United States*, No. 97CR1275WK, 2002 WL 449651, at *4 (S.D.N.Y. Mar. 21, 2002) (the court found that cross examination of a witness regarding a civil suit that was dismissed six or seven years prior, without any findings of wrongdoing, would not be probative of truthfulness).

　　In contrast to the cases cited by the government, ███████ investigation related to Mr. Robertson concerns his improper self-dealing, undisclosed conflicts of interest, and potentially related failures to supervise and monitor subordinates and company investments.  These allegations bear on Mr. Robertson's truthfulness.  Additionally, these allegations all relate to the subject matter and facts of the government's charges and will not distract the jury with unfairly prejudicial or tangential enquiries into matters completely separate from the facts involved in this trial.

　　Pursuant to FRE 608(b), the Court should permit the defense to cross examine Mr. Robertson on specific instances of his conduct that are probative of his character for truthfulness, including: the fact ████████ investigation; the fact ████████ opinion that he was untruthful in

his testimony ▮▮▮▮; his termination from BlackRock; his failure to disclose conflicts of interest related to BlackRock, BIT, and Aviron; and the relationship between this undisclosed conflict and Mr. Robertson's failure to properly manage BlackRock and BIT investments in Aviron and his failure to properly supervise his subordinates at BlackRock.

### 3.     Evidence of Wealth

The government seeks to preclude the defense from questioning witnesses about the wealth or income of BlackRock, BIT, or their employees related to any argument that those entities or individuals were excessively compensated or that BlackRock or BIT could afford any losses they may have suffered.  The defense will not question witnesses about any entity or individual's wealth for this purpose (the defense does not anticipate any questions related to wealth or income but reserves the right to enquire should such questions become relevant).

The defense does believe, however, that it is appropriate for the jury to understand what BlackRock is, including its size and sophistication.  That evidence is important context for the jury to understand, among other things, the lengths that Mr. Robertson had to go to to hide his misconduct from BlackRock.  But to repeat:  the defense does not presently intend to argue, for example, that BlackRock is an unworthy victim or that the alleged losses in this case were immaterial in the context of BlackRock's entire asset base.  Should that ever become relevant, we will raise the issue with the Court before asking any questions in front of the jury.

Relatedly, in its brief, the government indicates that it "anticipates that the evidence will show that [Mr.] Sadleir was *not* a person of wealth during the relevant time period, and that much of his spending was financed in large part by the proceeds of the charged offenses."  Gov. Motion, p.13.  The government should be held to its own standard, and the Court should disallow evidence of Mr. Sadleir's wealth (or purported lack thereof), except as the government agrees in

its brief, "to matters directly relevant to the charged offenses," such as those related to the government's allegations that Mr. Sadleir used misappropriated funds for personal expenses.

### 4.    Mr. Sadleir's "Good Acts"

The defense does not presently intend to introduce evidence of any of Mr. Sadleir's previous good acts for the purpose of demonstrating his propensity for good acts.

### 5.    BlackRock and/or BIT's Negligence

Mr. Sadleir has plead not guilty to the charges in the indictment.  A response to the government's arguments in this section would approach impermissible burden-shifting and presuppose Mr. Sadleir's guilt and that BlackRock and BIT are victims.  If necessary, the defense can make a further *ex parte* submission on this point.

Relatedly, the government should not be allowed to confuse the jury about the guilt or innocence of Mr. Sadleir by pointing to the effects of the alleged fraud on the purported victims. Moreover, "proof of actual loss by the intended victim is not necessary" to satisfy elements of a fraud.  *United States v. Sokolow*, 91 F.3d 396, 406–07 (3d Cir. 1996).

### 6.    "Presence of Counsel" Defense

The defense has informed the government that it does not intend to assert an "advice of counsel" defense.  In its Motion, the government suggests that Mr. Sadleir may seek to "mount a 'disguised reliance argument.'"  Gov. Motion, p. 22.  Having informed the government that the defense does not intend to assert an advice of counsel defense, the defense does not now seek to smuggle in a disguised advice of counsel defense, and the defense does not intend to request a jury instruction related to an advice of counsel defense.

While the defense does fully intend to argue that Mr. Sadleir did not act willfully and with intent to defraud, and may ask questions or introduce evidence that negates the government's allegations of willfulness, we do not anticipate any line of questioning related to a

disguised advice of counsel defense to become an issue.  To the extent that the government is concerned about a such a defense, the government may, of course, object to individual and specific defense questions as appropriate.

**7.      "Jury Nullification"**

The defense does not intend to argue for jury nullification.  However, the government's argument goes far beyond that, and seeks to exclude basic background information about the defendant, such that he is married with children.  Such evidence is routinely admitted, and so long as it is not coupled with an appeal to the jury to acquit notwithstanding the evidence, perfectly appropriate.  Further, any conceivable prejudice from this basic background evidence will be cured by the Court's instructions to the jury, which presumably will include among other things (1) that the jury's determination of guilt or innocence must be based solely on the law as explained by the Court; and (2) sympathy for the defendant should play no role in the jury's deliberations.

**8.      Cairn and Aviron**

The government proposes to introduce two new and uncharged crimes into evidence as "direct evidence" of the crimes charged in the indictment.  "Evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.  (Cleaned up) *United States v. Carboni,* 204 F.3d 39, 44 (2d Cir.2000) (quoting *United States v. Gonzalez,* 110 F.3d 936, 942 (2d Cir.1997)).

Evidence of uncharged criminal activity is not considered other crimes evidence under FRE 404(b) if: (1) it arose out of the same transaction or series of transactions as the charged offense; (2) it is inextricably intertwined with the evidence regarding the charged offense; or (3)

it is necessary to complete the story of the crime on trial.  *United States v. Carboni*, 204 F.3d 39,

44 (2d Cir. 2000).  Although the government cites to the appropriate rule, it makes little effort to

indicate that any of these factors apply to the new crimes it alleges in "Cairn" and "Aviron."

      A.    <u>Cairn Theory</u>

Even assuming the government's account of its Cairn Theory, the government does not

analyze any of the three "*Carboni* elements," aside from the bare allegation that Mr. Sadleir

"needed to generate three million dollars" to fund the settlement with Cairn.  However, the

government does not allege that Mr. Sadleir had any knowledge of the purportedly fraudulent

documents that the government claims were "from a third party, National Reporting Group, that

fabricated [the data in the documents]."  Gov. Motion, p. 33.  The government never claims that

Mr. Sadleir played any role in creating the fabricated documents, and the government never

claims that Mr. Sadleir was aware of any false claims in the fabricated documents.  In short, the

government does not allege that Mr. Sadleir committed any crime in its description of its Cairn

Theory.  It should also be noted, in the settlement agreement between Mr. Sadleir and Cairn,

neither party admits any wrongdoing.

Next, the government makes a series of conclusory statements that the crimes "arose out

of the same series of transactions," that they are "inextricably intertwined," that it is necessary

for the government to introduce evidence of its Cairn Theory in order "to complete the story,"

and that evidence of its Cairn Theory is necessary to "give coherence to the basic sequence" of

events in the indictment.  Gov. Motion, p. 33.  Crediting that the government alleges the amount

of $3 million to be the same figure in both purported crimes, each of the other statements the

government offers in support of its theory that these two "crimes" are linked could be made in

the same conclusory fashion about almost any other crime the government might randomly

allege.

Although the government alleges that the funds used to satisfy Cairn came from the same account the government alleges contained funds derived from the alleged UCC crime, the government offers no evidence of other funds available in that account, any source of other funds in that account, and whether any accounting or forensic analysis was conducted on the account. The government's allegations regarding its Cairn Theory would be insufficient to support a finding of probable cause that the funds from one alleged crime could be traced to the other or that the purported crimes are linked at all. It is worth pointing out that if the government were able to support its allegations that Mr. Sadleir committed a crime related to its Cairn Theory, it could have brought its evidence to the same grand jury that returned the indictment in this case and sought to supersede. The Court should deny admitting evidence of the government's Cairn allegations.

B.      Aviron Theory

Again, even assuming the government's account of its Aviron Theory, the government's allegations about "misrepresentations to Aviron Employees" are supported by far less proffered evidence even than the Cairn allegations. The entire sum and substance of the government's allegations regarding supposed misrepresentations to Aviron employees is the government's allegation that Mr. Sadlier informed one or more employees that outside investors had made commitments to financially back Aviron for five years. Gov. Motion, p. 33. The government does not allege that these were knowing misrepresentations, that they were material to any listener, or that any employee in fact relied on any such statement. The government has not alleged the prima facie elements of any crime—or even any bad act. The government declines even to scrutinize the three "*Carboni* elements" it sets forth as the appropriate test to distinguish "direct evidence" from 404(b) evidence. The Court should deny admitting any evidence of the government's allegations related to its Aviron Theory.

14

**9.      FRE 404(b)[2]**

Rule 404(b) prohibits the introduction of evidence of prior bad acts to prove a

defendant's character or propensity. *See* Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or

other act is not admissible to prove a person's character in order to show that on a particular

occasion the person acted in accordance with the character."). The rule recognizes the danger

that a fact finder will use prior act evidence to conclude that because someone acted wrongly in

the past, they must have acted wrongly with respect to the charged conduct. *See, e.g.*, *Old Chief*

*v. United States*, 519 U.S. 172, 180 (1997).

In considering whether prior acts evidence is admissible, courts in the Second Circuit

look to several fact-specific considerations:

> When reviewing the admission of evidence pursuant to Rule 404(b),
> we consider whether (1) the prior crimes evidence was "offered for
> a proper purpose;" (2) the evidence was relevant to a disputed issue;
> (3) the probative value of the evidence was substantially outweighed
> by its potential for unfair prejudice pursuant to Rule 403; and (4) the
> court administered an appropriate limiting instruction.

*United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009).

As the proponent of the evidence, the government bears the burden of proof as to

admissibility, and the district court should not "presume that such evidence is relevant or

admissible." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011); *accord United States v.*

*Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000) ("The government . . . must explain in

detail the purposes for which the evidence is sought to be admitted." (citing *United States v.*

*Levy*, 731 F.2d 997, 1002 (2d Cir. 1984))).

---

[2] As the government only seeks to admit evidence regarding the allegations charged in the
Central District of California under FRE 608(b)(1), the defense reserves any objections.

Where the government offers Rule 404(b) evidence on the issue of state of mind (as is the case here), it must demonstrate a high degree of similarity between the proffered evidence and the charged crimes.

> To satisfy the relevance inquiry, the evidence must be "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the [state of mind] inference advocated by the proponent of the evidence." The district court must consider all the evidence presented to the jury and determine whether a reasonable jury could find the advocated inference. The court abuses its discretion if the evidence is "not sufficiently similar" to the charged conduct or if "the chain of inferences necessary to connect [the] evidence with the ultimate fact to be proved [is] unduly long."

*Curley*, 639 F.3d at 57 (quoting *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987)). Put differently, prior act evidence is not probative of a defendant's state of mind unless there is "a 'close parallel' between the crime charged and the acts shown." *United States v. Corey*, 566 F.2d 429, 431 (2d Cir. 1977); *see also United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002) ("The government may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime."); *United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) ("[E]vidence of another act should not be admitted as proof of the defendant's knowledge or intent unless the other act is 'sufficiently similar to the conduct at issue' . . . . [s]imilarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charge[d]."  (citations omitted)); *id.* (in addition to approaching "near identity" to charged crimes, prior acts evidence must have "*substantial* relevanc[e]" (emphasis supplied)).

If the proffered Rule 404(b) evidence is relevant to the charged crimes under these standards, the Court must then consider, under Rule 403, whether the "potential for unfair prejudice" outweighs its probative value.

> If the evidence is relevant, the district court must determine if its potential for unfair prejudice substantially outweighs its probative value. *See* Fed. R. Evid. 403. The evidence's probative value "depends largely on whether or not there is a close parallel between the crime charged and the acts shown." Evidence is unfairly prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." If the other acts tend to prove a fact not in issue or "to excite emotions against the defendant," they create a prejudicial effect. The district court abuses its discretion when it admits "other act" evidence with a high possibility of jury misuse but with only slightly more probative value than other evidence on the same issue.

*Curley*, 639 F.3d at 57 (citations omitted).

Even where evidence is otherwise admissible under Rule 404(b), the Court has "broad discretion" in refusing to admit evidence related to extrinsic acts. *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir. 1990).

A.   Cairn Theory

As described above, the government's proffered evidence on its Cairn Theory consists entirely of unproven allegations, and, even if taken as true, would be thin and would not support probable cause that Mr. Sadlier had committed any crime at all. Notwithstanding, the government argues that evidence of its Cairn Theory should be admissible against Mr. Sadleir under FRE 404(b) because it shows: 1) Mr. Sadlier's motive to engage in the crime charged in the "UCC" allegations; and 2) Mr. Sadleir's "intent and knowledge."[3]

Aside from the fact that in the absence of a colorable allegation that Mr. Sadleir committed any crime at all related to the government's Cairn Theory, and that any crime would be merely an allegation in an event, the government makes no meaningful argument at all

---

[3] In this same section related to the government's arguments on FRE 404(b), the government asserts that evidence related to its Cairn Theory is admissible to "refute" certain assertions the government is anticipating. This does not appear to be a FRE 404(b) argument, and the defense reserves objections.

regarding admissibility based on "intent and knowledge."  Further, because the government's proffered evidence does not actually assert that Mr. Sadleir actually committed any crime related to its Cairn Theory, the probative value of the government's allegations is minimal.  As a result, almost any prejudice flowing from the admission of evidence related to the Cairn Theory would substantially outweigh the scant probative value, and likely to result in substantial confusion of the jury.

                    B.    <u>Aviron Theory</u>

Also as described in the "direct evidence" section above, the government offers even less rationale to admit evidence on the Aviron Theory than it does on its Cairn Theory, and the government offers no analysis of the specific purpose it seeks to admit evidence of this theory, and the Court should deny admitting any evidence on the Aviron Theory on this basis alone. Again, pursuant to Rule 403, whatever probative value this theory might have is substantially outweighed by the prejudice of permitting this evidence.

**10.    Out of Court Statements**

The government indicates that it will seek to introduce various text messages and also certain statements made by non-testifying witnesses that it contends are non-hearsay.  The defense will reserve any objection until the government present such evidence.

## **CONCLUSION**

For the reasons just given, Mr. Sadleir respectfully request that this Court deny the

government's Motion *In Limine* as set forth herein.

Dated:      January 13, 2022
              New York, New York

Respectfully submitted,

/s/ John J. Kucera
John J. Kucera
jkucera@bsfllp.com
BOIES SCHILLER FLEXNER LLP
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017

Matthew L. Schwartz
Valecia Battle
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
mlschwartz@bsfllp.com

*Attorneys for William Sadleir*

19