

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

September 7, 2023

**BY ECF AND EMAIL**

The Honorable Paul A. Engelmayer
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *United States* v. *William Sadleir*, 20 Cr. 320 (PAE)

Dear Judge Engelmayer:

      The Government writes in response to defendant William Sadleir's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion").  Dkt. 96.  In his Motion, Sadleir makes the following arguments: (1) he is not receiving adequate medical attention while incarcerated, including for his colon cancer; (2) he is factually innocent because he lacked fraudulent intent; and (3) the Government failed to disclose to him that one of the victims of his fraud, Blackrock, recovered its losses in part through an insurance policy.  Sadleir's arguments are without merit, and his motion should be denied.

### The Offense Conduct

      William Sadleir was the chairman and chief executive officer of Aviron Pictures, LLC, a film production and distribution company based in Los Angeles, California.  Sadleir participated in two fraudulent schemes (together, the "Schemes") relating to an approximately $75 million investment made by the BlackRock Multi-Sector Income Trust ("BIT") in Aviron Pictures, LLC and its associated entities ("Aviron").

      In one scheme, the "Advertising Scheme," Sadleir misappropriated millions of dollars in funds that BIT had invested in Aviron.  Sadleir represented to BIT that Aviron had in turn invested this money in pre-paid media credits[1] with the media and advertising planning and

---

[1] Pre-paid media credits, also sometimes referred to as "up fronts," are advance commitments by large clients for media advertising over a given period, which a media buyer then purchases in

1

placement company MediaCom Worldwide, LLC ("MediaCom"), which is a subsidiary of the advertising and media agency GroupM Worldwide LLC ("GroupM"). Instead, using the bank account for a sham entity he had created, Sadleir illicitly transferred out of Aviron over $25 million of those funds. Specifically, Sadleir created a sham New York-based company called GroupM Media Services, LLC (the "Sham GroupM LLC"), designed to pass as GroupM. He also created a corresponding bank account in the name of the Sham GroupM LLC. Sadleir then used a significant portion of those illicitly transferred funds for his personal benefit, including to purchase a private residence in Beverly Hills (the "Beverly Hills Residence") for approximately $14 million. Sadleir then falsely represented to BIT that Aviron had purchased an approximately $28,597,000 balance in pre-paid media credits with MediaCom or GroupM that were available to promote future Aviron films. He also pledged a portion of those credits to BIT as collateral for additional loans. In fact, the claimed credits did not exist, and Sadleir misappropriated BIT's funds.

As part of this scheme, Sadleir also created a fake identity of a purported New York-based female employee of the Sham GroupM LLC named "Amanda Stevens," which identity corresponded with a representative of BIT and assured BIT that Aviron maintained an approximately $27 million balance in pre-paid media credits with the Sham GroupM LLC. In fact, Sadleir himself posed as Amanda Stevens when engaging in these email exchanges with a BIT representative.

In the other scheme, the "UCC Scheme," Sadleir engineered the illicit and fraudulent sale and refinancing, to a third party, of assets that secured BIT's loans to Aviron. Those assets were worth an estimated three million dollars, and BIT had placed Uniform Commercial Code ("UCC") liens on the assets. As part of the UCC Scheme, Sadleir forged the signature of one of BIT's portfolio managers, Randy Robertson, to make it appear that Robertson had authorized the UCC liens to be released from those assets. Sadleir then sold the assets.

## Procedural History

On May 22, 2020, Sadleir was arrested on a Complaint filed in this District (the "Complaint") charging him with two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Sadleir was simultaneously arrested on charges brought in the Central District of California arising out of a scheme to fraudulently obtain Paycheck Protection Program loans (the "PPP Fraud"), including charges for committing wire fraud, bank fraud, making false statements in connection with loan applications, and money laundering. In the PPP Fraud, Sadleir obtained funds for his own personal use by misrepresenting that those funds would be used for the business purposes of Aviron entities, and by making false representations about the entities' payroll expenses, number of employees, and operational status. Sadleir misrepresented that the loan funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and

---

bulk from media outlets, aggregating clients' commitments and usually obtaining a discount based on its market power from such aggregation. Sadleir represented, however, that such credits were paid in advance and could be redeemed for specific media advertising at a later time.

utility payments, when in truth Sadleir intended to, and did, misappropriate the loan funds in substantial part for his own personal use and for expenses prohibited by the program.

On June 23, 2020, the grand jury returned Indictment 20 Cr. 320 (PAE), charging Sadleir with the same offenses as the Complaint.

On January 20, 2022, less than one week before trial in this matter was scheduled to begin and after the parties had briefed motions *in limine*, Sadleir pleaded guilty to Counts One and Two of the Indictment pursuant to a written plea agreement (the "Plea Agreement"). The Plea Agreement set forth the following stipulations, resulting in an applicable Guidelines offense level of 31.

- Pursuant to U.S.S.G. §§ 3D1.1(a)(1), 3D1.2(d), and 3D1.3(b), Counts One and Two are grouped together as a single group because the offense level is determined largely on the basis of the total amount of loss or harm.

- The applicable sentencing guideline is U.S.S.G. § 2B1.1. Pursuant to U.S.S.G. § 2B1.1(a)(1), the defendant's base offense level is 7.

- Pursuant to U.S.S.G. § 2B1.1(b)(1)(L), the defendant's offense level is increased by 22 because the offense involved more than $25,000,000 but less than $65,000,000 in intended loss.

- Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), the defendant's offense level is increased by 2 because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means.

- Pursuant to U.S.S.G. § 2B1.1(b)(17)(A), the defendant's offense level is increased by 2 because the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense.

- Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G § 3E1.1(a).

The Plea Agreement stated that the defendant did not have any criminal history points at that time, meaning the defendant's Criminal History Category was I. Those provisions resulted in a stipulated Guidelines range of 108 to 135 months' imprisonment. The Plea Agreement also provided that Sadleir would pay restitution and forfeiture in an amount of at least $31,597,000, and would forfeit the Beverly Hills Residence and a 2017 Tesla Model X vehicle.

Following his guilty plea in this case, Sadleir pleaded guilty on or about March 16, 2022 in the Central District of California to charges relating to the PPP Fraud. *See* 20 Cr. 299 (DMG) (C.D. Cal.).

On September 9, 2022, this Court sentenced Sadleir principally to six years' imprisonment on both counts One and Two, with those terms of imprisonment to run concurrently. Dkt. 87. At sentencing, the Court adopted the Guidelines calculation set forth in the PSR and Sadleir's plea agreement without objection. The Court also imposed restitution in the amount of $31,597,000, based on (1) the $28,597,000 in assets that Sadleir falsely claimed to have invested with the Sham GroupM LLC; and (2) the $3,000,000 in assets that Sadleir illicitly sold in the UCC Fraud.

Sadleir did not appeal this sentence or file a habeas petition challenging it. Sadleir began serving his sentence in or about February 2023, and the Bureau of Prisons currently estimates that Sadleir will complete his sentence in or about January 2028.

On October 18, 2022, Sadleir was sentenced in the PPP Fraud case to 41 months' imprisonment, to be served concurrently with his sentence in this matter.

On February 2, 2023, this Court issued an order noting that it had received a submission from Sadleir's spouse seeking to modify Sadleir's sentence, and attaching medical and other information. The Court noted that it did not have the authority to modify Sadleir's sentence, and in any event "[t]he 72-month prison sentence imposed remains the just and reasonable one here, given, *inter alia*, the gravity, duration, greed, and shamelessness of the multi-million frauds committed by Mr. Sadleir." Dkt. 94 at 2.

On or about August 7, 2023, Sadleir filed the Motion. Sadleir has exhausted his administrative remedies for the purposes of the Motion because he moved within the U.S. Bureau of Prisons ("BOP") for compassionate release, a request that the warden of his facility denied on or about May 19, 2023.

## Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A), "[t]he court may not modify a term of imprisonment once it has been imposed except" as provided in the statute. A court can modify a sentence only if, as relevant here, it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Any proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In addition, the factors set forth in 18 U.S.C. § 3553(a) are relevant to determining whether compassionate release is warranted. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

The application notes to Guidelines Section 1B1.13 provide three instances where "extraordinary and compelling" reasons exist: (A) the defendant has a serious medical condition, such as a terminal illness (or a functional or cognitive impairment) that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"; (B) the defendant is, among other things, at least 65 years old and seriously deteriorating in physical or mental health because of the aging process (and has served at least ten years or 75 percent of his sentence); or (C) changes in the defendant's family circumstances leave the defendant as the only available caregiver for a minor child or incapacitated spouse. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The application notes also allow

4

a catchall provision permitting a sentence reduction where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at cmt. n.1(D).

Sadleir bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.").

## Discussion

Sadleir has failed to identify any applicable "extraordinary and compelling" reason warranting a sentencing reduction. As to his medical issues, BOP medical records indicate that Sadleir has received regular medical evaluations and treatment, including physical evaluations, medications for high blood pressure, prostate-specific antigen ("PSA") testing, and medical scans. *See* medical records attached hereto as Exhibit A, at 6, 8, 13, 16-17, 20, 31-32, 34, 45, 53-56, 58, 71, which the Government requests be filed under seal. Sadleir asserts in conclusory fashion that he has not been provided "adequate care," Motion at 53, but he fails to provide any evidence for that claim. In particular, Sadleir complains that he has not been administered a "uroflow" (a test that measures the volume of urine released from the body)[2] or "postvoid residual testing" (a measure of the amount of urine that remains in a patient's bladder after they urinate),[3] but fails to explain why those tests constitute necessary and appropriate medical care that he has failed to receive. Indeed, Sadleir states in his motion that prior to his incarceration, he decided in consultation with his personal physician to pursue a treatment of "active surveillance" as to his colon cancer, an approach in which a cancer is "closely monitored for any changes" at medical visits "every few months," but "[n]o cancer treatment is provided during active surveillance for prostate cancer."[4] According to Sadleir's medical records, BOP medical personnel have monitored Sadleir's prostate and conducted testing on his PSA levels. Exhibit A, at 6, 8, 13, 16-17, 20, 31, 34, 45, 55, 58. Based on recent communications with the BOP, the Government understands that the BOP will continue to provide medically appropriate treatment to Sadleir for his health conditions. Thus, Sadleir has failed to identify any medical issues that would constitute "extraordinary and compelling" circumstances.

Sadleir's contention that he is factually innocent because he lacked criminal intent, and that certain Guidelines enhancements should not have been applied at sentencing, cannot establish "extraordinary and compelling" circumstances because "it would be both improper and inconsistent with the First Step Act to allow [a defendant] to use 18 U.S.C. § 3582(c)(1)(A) as a

---

[2] *See* UCSF Health, *Uroflowmetry,* available at https://www.ucsfhealth.org/medical-tests/uroflowmetry.
[3] See Cleveland Clinic, *Post-Void Residual Urine Test*, available at https://my.clevelandclinic.org/health/diseases/16423-postvoid-residual
[4] *See* Mayo Clinic, *Active surveillance for prostate cancer*, available at https://www.mayoclinic.org/tests-procedures/active-surveillance-for-prostate-cancer/about/pac-20384946

vehicle for claiming legal wrongs, instead of following the normal methods of a direct appeal or a habeas petition." *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020); *see also United States v. Antney*, No. 17 Cr. 229 (CBA), 2021 WL 4502478, at *5 (E.D.N.Y. Sept. 30, 2021) ("[The defendant's] first argument is essentially that his sentence was unfair because it was based on a faulty guidelines calculation. He could have made this argument at sentencing, on direct appeal, or in a habeas petition. A motion for compassionate release should not be used to attack the legitimacy of a judge's imposed sentence—such an attack is properly brought on direct appeal or in a habeas petition, not in a motion for compassionate release brought under 18 U.S.C. § 3582(c)(1)(A). To hold otherwise would be to allow compassionate release motions to act as an end run around the limitations imposed by § 2255.").

In any event, Sadleir's self-serving claims of factual innocence are undermined by his own plea allocution, his admissions at sentencing, and the record evidence in this case, including the sworn complaint. *See* Dkt. 75 at 23-30 ("In at least 2019 and 2020, I engaged in a scheme to defraud the BlackRock Multi-Sector Income Trust…"); Dkt. 90 at ("I apologize again, your Honor. I take full responsibility for my actions. . . . In my mind, I thought the ends justified the means. . . . I'm the one that took actions that result in this criminal conduct."). In light of Sadleir's prior admission, under oath, of his guilt, the Court can and should wholly discount Sadleir's unsupported claim that he lacked criminal intent. *See Sanchez v. United States*, No. 10 Cr. 392 (CS), 2021 WL 2481836, at *3 (S.D.N.Y. June 17, 2021) (relying on defendant's sworn plea allocution in discounting contrary assertions made in habeas petition)*; see also Williams v. United States*, 481 F.2d 339, 346 (2d Cir. 1973) (in habeas context, a court may "discount" a petitioner's "uncorroborated, untimely, self-serving testimony").

Sadleir also claims that evidence of Blackrock's insurance recovery related to the fraud was suppressed, and this should have been considered at his sentencing. But this fact—contained in a press release issued by Blackrock in August 2020—was actually raised by Sadleir's counsel and Sadleir himself at sentencing. Dkt. 90 at 46-49, 57-58 ("So, we don't have a complete accounting of this, but between what BlackRock tells probation, as reflected in the PSR, and BlackRock's own press releases, it looks like they recovered $72 million on account of this debt, which reflects payment in full plus a return equivalent to the average of the other investments in that particular fund. That 72 million, as best as I can tell, is comprised of 32 million in insurance recoveries and $40 million in what is described as 'contributions by BlackRock and transactions relating to the defaulted loans.'"). Sadleir's challenge to his Guidelines calculation and to the restitution order are also both explicitly foreclosed by his plea agreement, in which he stipulated to the findings that he now seeks to challenge. *United States v. Rogers*, 633 F. App'x 564, 564-65 (2d Cir. 2016) (defendant waived challenge to career-offender classification where "he expressly conceded that classification" at sentencing). Of course, as noted above, these claims do not provide a cognizable basis for relief under Section 3582.

Even if Sadleir could somehow establish "extraordinary and compelling" circumstances, he could not carry his burden of proving that he is entitled to the relief he seeks in light of the Section 3553(a) factors that the Court must consider in determining whether to grant a discretionary sentence reduction. As the Court is aware, and as discussed in the Government's sentencing submission, Sadleir's sentence was justified because of (1) the brazen and calculated nature of the offense conduct, including the creation of a fake advertising company and fake

identity; (2) the lengthy period of time during which Sadleir engaged in fraudulent conduct; (3) the fact that Sadleir obtained extravagant personal benefits from his fraud, including the Beverly Hills Residence; (4) Sadleir's prolific and diverse fraudulent conduct, encompassing not just the two separate fraudulent schemes charged in this case but several other frauds committed during approximately the same time period; and (5) Sadleir's tremendous personal privilege, including degrees from prestigious universities, employment in multiple executive positions, and role as a personal aide to a U.S. president.  As this Court stated at Sadleir's sentencing:

> Yours is not a case of a fleeting, one time, immediately regretted mistake for which a substantial punishment would be disproportionate. And I say this advisedly -- your case is a case of a person "Breaking Bad."  Late in your career, you dipped your toe in crime, but rather than being repelled, you found that it paid, and you gradually plunged deeper and deeper and deeper in. . . .  I have been on the bench, effective a couple weeks from now, for 11 years. Yours was one of the most brazen and cynical and persistent and, frankly, given all the advantages you had and all the lawful means of accumulating wealth at your disposal, disappointing fraud schemes I have seen. As a matter of just punishment, a substantial prison term is unavoidably necessary.

Dkt. 90 at 68, 71.

If Sadleir's Motion were granted, it would result in his serving approximately seven months of an approximately six-year term of imprisonment.  Such a reduction is wholly unwarranted.  Reducing Sadleir's sentence by such a significant amount would send the wrong message both to Sadleir and to others who are aware of his crimes.

## Conclusion

For the reasons set forth above, the Government respectfully submits that Sadleir's motion for a modification of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) should be denied both because he has failed to establish "extraordinary and compelling" circumstances and because a sentence reduction is not warranted based on the Section 3553(a) factors.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Jared Lenow
Assistant United States Attorney
(212) 637-1068

cc (by U.S. Mail):

William Sadleir
Register Number 79460-112
FCC Lompoc Satellite Camp
3705 West Farm Road
Lompoc, California 93436-2756